Good late morning, your honors. My name is Richard Rosenthal. I represent appellant Eugene Arrensaft. I would like to reserve five minutes for reply. The recent Supreme Court ruling of Black and Decker has taken the review of the medical evidence under the treating physician rule off the table. Therefore there are two remaining issues. The first... Therefore it should not take as long to argue since we've eliminated an issue and we will hold you strictly to the time limits in this case but don't feel you need to use the entire time. I won't your honor. I do have things to say though. Whether the two remaining issues is whether the trial court incorrectly applied the abusive discretion standard of review to the plan administrator's denial of benefits instead of the de novo review. If in fact... Aren't we... Isn't that a law of the case question? Didn't the prior decision of this court... No your honor. Why not? Quite frankly it doesn't. That decision and you have it before you clearly states that the parties agreed that slash stipulated to the standard of review. If the the time the chronology of the case was that Benedictine as we saw it was the rule of the Ninth Circuit. Benedictine stated that there was that the same exact policy your honor was subject to the abusive discretion standard. Subsequent to the district courts opinion and after our opening brief the Ingram case came down and if you I know you know the Ingram case. Ingram basically found the Ingram analysis determined at least the MetLife policy did not have the clarity that was required to grant the plan administrator discretion. It did not confer discretion and the Ingram analysis was directly on point as to the clarity that was required and it dissected the MetLife policy. In Ingram they refer to what took place in Benedictine and they found Benedictine to not have addressed the clarity of the language dealing with whether or not the abusive discretion what whether discretion was bestowed upon the plan administrator. All that Benedictine decided was whether or not there was evidence in the record to support a finding of breach of fiduciary duty that would then heighten the abusive discretion standard. I.e. was there a conflict and was there objective evidence to support the conflict. That is that's what Benedictine stands for regarding the standard of review. It did not as the Ingram court notes deal with the clarity of the language. So Ingram deals with the clarity of the language how to dissect it and if that dissection is taking place in our case there's only one conclusion that one can draw at least from our vantage point is that the grant of authority is at best ambiguous. It does not grant unambiguous discretion to the plan administrator. In fact the term discretion is nowhere used. In fact your honors I can go directly to the extent of that discretion. And this compares standards of policy with the Ingram policy language and as Judge Fletcher went through the analysis. Now the grant of the allocation of authority that only allocates to the employer and the plan administrator. Let me just ask one question. What was the date of the Ingram decision? The Ingram decision your honor I have it right here. It was April the 4th 2001. And the date of the memorandum disposition was April 29th 2002. A year later. The first the Ingram came out after we filed our opening brief. Before the reply brief right? What's that? Before the reply brief was filed? Yes. Before the reply brief was filed your honors we weren't aware of Ingram opposing counsel was aware of Ingram and Judge Fletcher and opposing counsel went through a dialogue regarding whether or not Ingram applies to this policy. Judge Fletcher felt that it did. But clearly we weren't aware of the case and I guess I don't see how that makes a bit of difference under the law of the case doctrine. There's no mistake here as far as the availability of Ingram to this consideration. It was considered and rejected and whether rightly or wrongly seems water under the bridge. What was considered and rejected? Well you said Ingram was discussed at the time of the oral argument. It was discussed in passing with opposing counsel your honor and opposing counsel was aware of it. So was the court aware of it. That's my point. The court was aware of it and there's no rejection by this court the first appellate court of applying Ingram to this case. We never argued it. We never briefed it and the court doesn't express it. The court narrowly says and I think they were leaving it open to us. The court narrowly said that the parties agreed that Benedictine applied to this case and we know as a matter of law that the parties cannot stipulate away the law. The court. I don't see that. Can you point me specifically in the excerpt what page you are referring to? Yes I'd be happy to. I see what you're saying. Both parties agree that it's on page 511 that the policy identical to that in Ben Dixon grants the necessary discretion. Are you now saying that the words of the policy are not identical to Ben Dixon or are you saying something different. Was that a factual mistake that it was the same. No this is the same exact policy. That's why we agreed in the first instance when we were before the district court initially that Benedictine applies. Yes. Then our issue before the before the district court the first time around was whether or not there was material probative evidence of a conflict. That's what. But Ingram was in place at the time of the prior decision was it not. The court of appeals determination. The Ingram determination was was yes. The Ingram had come out prior to the first court of appeals decision in this case. Yes. Is that your question Your Honor. Yes that's the question. Right. And like I said it wasn't argued it wasn't briefed. The court didn't rule on it. But it was there. And if if if a party had chosen to say you know that this case controls it was free to do so. And that was the time to decide that issue. It was not a case that was 10 years old. And he said well you know we didn't argue that final decision. We don't. We did not get a final decision. What's not final about this. The holding that this about the standard of review what it went back for we now know was unnecessary and incorrect. But but but we don't agree with that either. Judge Graber because regular is no longer regular. It's no longer the law. I agree with that. However the first court never determined whether the medical evidence would support the use of discretion standard. We rebound to the district court for application of the treating physician rule in light of regular with the citation but otherwise affirm the district court's application of an abuse of discretion standard to review the plan administrator's denial of benefits. What's not final about that. Well let's break it down so I'm I'm not confused and I don't confuse you. We say there's two issues. One issue is whether the Ninth Circuit the first time around determined whether a beaut whether the plan language was clear enough to grant discretion. Was it so unambiguous that without the term discretion in it that the grant was conferred to the plan administrator. What I'm saying to you is that issue was never brief. It was never argued and it was never decided. And the opinion at 511 clearly states that. What it states is that the parties agreed that the standard would apply. And then there's more discussion in on on 512. We therefore affirm the district court's application of abuse of discretion rather than de novo review. That's right because what they were addressing there Your Honor is they just got done denying our arguments regarding the whether there was objective evidence of a conflict between the plan administrator and the insurance company. They were the same parties. Was there a breach of fiduciary duty. That's what was litigated. That's what was briefed. That's what was argued. And that's what the court is deciding at 512. They predicate the clarity of the language in the policy because the court was not aware of Ingram. And they stipulated to it. Now, we readily admit we weren't aware of Ingram. Opposing counsel was aware of Ingram. He didn't cite it. He didn't bring it up. He didn't make it. He didn't make the court aware of it. He didn't make opposing counsel aware of it. Rules of professional conduct require that. I'm not sure whether the rules of this court require it or not. But if we were informed of that, we would have clearly asked for a continuance. We would have briefed it. We would have argued. We would have asked for something to get that issue before the court because we believe it's determinative. So the bottom line to it is are we going to punish Mr. Aronsaf. Well, you could have another remedy. But the you know, it's an issue. I suppose it was never raised at all. I suppose what the court hadn't said, abuse of discretion is the right standard, or the parties hadn't told that to the court. But you come up on an appeal and you don't raise an issue. Let's assume that's what happened. And then you get sent back on a limited issue. Can you come up the second time and say, well, we've got another issue we didn't raise in the first appeal? I would generally I mean, I don't know what the answer to that question is. Well, the general answer. It would depend on what your pleadings are, what was litigated before the district court on that summary judgment motion, what the scope of the ruling was. I think what is clear is that if the law of the case doctrine only applies if the issue is argued, briefed, argued, and ruled upon. And I don't think that's the case. I don't think it was intent. It was clearly not briefed. We didn't argue it. It was discussed with opposing counsel, with Judge Fletcher, and he gave his views on it. I think if he wanted to limit that or if he was going to decide it in some fashion, his opinion would have been much more clear than it is here. Here it's clear, from our vantage point, that the clarity of the policy language was not at issue. It was not determined. It was agreed upon by the parties, and that's what was before him on the first appeal. Now, the law of the case deals with really the district court. Is there intervening law between the first district court case and the remand back to the district court? And if there would be prejudice, and is there intervening law that is on point, maybe that's the answer to your prior question, Your Honor. If there is hardship based upon a change in the law, maybe that's enough to get around the law of the case. I mean, there are some equitable elements of the law of the case. And if that is the case, and is Aaron Sapp going to be prejudiced, then I think the law of the case should not apply in this instance. And it comes down to whether or not the Ingram analysis applies to this policy. We believe it does. Discretion is not unambiguously granted. It's not stated. And we go through that in our brief. You have four minutes if you want to save it for rebuttal. Yes, I do want to save a couple minutes for rebuttal. But the second issue that Judge Graber brought up is the treating physician rule is off the table. There's no question about it. But this court did not determine whether the medical evidence in the record satisfies even the abuse of discretion standard. He said go back and analyze it pursuant to regular. It has not been analyzed. And it's our contention that the medical evidence in the record is clear that even under the abuse of discretion standard, there is no evidence in the record to rebut Aaron Sapp's doctors that he does not have the medical evidence to handle the job of controller, even under the definition of within the occupational titles. No evidence. And in fact, standards one of standards doctors, Dr. Rimaldi, requested psychological testing and standard never undertook it. So under that prong, Your Honor, we believe not dealing with the physical aspects because under the abuse of discretion standard, it only has to be reasonable. But under the mental acuity prong, there is no evidence in the record to rebut Aaron Sapp's doctors or to support the notion that he can perform the job of controller. Thank you, Your Honor. Good morning. My name is Christopher Starring, representing the APELI plan. I'd like to address the last point that Mr. Rosenthal made first, if I may, with regard to the state of the medical evidence today, even in the absence of the treating physician rule, which NORD has disposed of. And that would be, if you would look at, you can see it in the excerpt of record, appellant's excerpt of record, page 588, which is a pleading in the summary judgment proceedings below in the district court on remand. There is an admission by Mr. Aaron Sapp that under a usual abuse of discretion review, we would prevail because the choice we made would be reasonable, absent the treating physician rule, and the treating physician rule is now absent. And that's on that point. Now, with regard to the posture of this case, in the first appeal, this Court of Appeals, in the first appeal, has issued a memorandum which amounts to a judgment, resolving all issues in the case save one, remanding it to the district court, instructing, mandating that that district judge in Nevada do one thing and one thing only, and that is consider the treating physician rule, which has now been disposed of by the Supreme Court's decision in NORD. The district judge in Nevada did that. He followed this Court's instructions. He dealt with the one issue that he was instructed to deal with. And at this point, and in this procedural posture, Mr. Aaron Sapp is now claiming that you should find that the district judge in Nevada committed error because he did not do something he was not instructed to do. It's probable that he couldn't do it, because he had expressed instructions from this Court telling him the one and only issue that remained for him to resolve. You're saying that's essentially jurisdictional so far as the district court is concerned. I think it is, Your Honor, and there is a case, and I would ask the Court to consider, but I will acknowledge that, quite candidly, I found it yesterday. So I can give you the citation that would support that. That's like the Ingram case, right? The proposition. Your Honor, I can give you that citation if you would like, and it is a case called Atlas Scraper v. Persh, 357 F. 2nd, 296. And it's a 1966 case, so I'm certainly not suggesting that it's a 1966 case. I'm suggesting that it's new law, but I am candidly admitting that I did find it yesterday. Yes, when you get to F. 2nd, you're getting into my realm. Essentially, they're claiming that the district judge should have overruled this Court and said, you know, even though they've told me, handle one issue, I'm going to go ahead and introduce a whole bunch of other issues, which are resolved in that memorandum, which amounts to a judgment. I'd like to touch on Ingram briefly. Ingram does not overrule Ben Dixon. It does not purport to overrule Ben Dixon, and it dealt with completely different policy language. Indeed, Ingram identifies Ben Dixon as one of four post-tyrney cases, published opinions, in which this Court has held that there is a sufficient grant of discretion. What Ingram did was decline to extend Ben Dixon, and in doing so, to apply to the completely different language that MetLife had present in the Ingram case. They said, we don't believe Ingram requires us to hold that MetLife's language, which was completely different. You mean Ben Dixon requires us. Right. Excuse me. We don't hold that Ben Dixon requires us to hold that MetLife's completely different language grants discretion. There's no dispute that the policy language in this case, our case, is the same case as Ben Dixon. That's acknowledged by the Court in the memorandum in the first appeal, and the policy language, of course, was set forth in its entirety in a footnote in Ben Dixon, and appears in its entirety on page 56 of the excerpt of records submitted by the appellant. There also, from Mr. Rosenthal's comments this morning, does not seem to be any dispute that Ben Dixon was indeed a holding of the Ninth Circuit, that the language in question, well, I don't think it's in question, Your Honor, but that the language in this case granted discretion. In that opinion, in the first appeal, the Court resolved that there is sufficient grant of discretion. The Court resolved every single issue except application of the treating physician rule. That was the only issue properly before the Court on remand. And now that issue no longer exists. I think you've made that argument already. Probably you've made your entire argument already. Your Honor, unless you have any questions, if any of you have any questions, I'd be happy to address them. Oh, I do have one other point I'd like to make, and that is this was described as a stipulation. This was not a stipulation in the classic sense that you find in a regular where parties for administrative purposes stipulate to something. In this particular case, this was an admission, an admission consistent with the Ninth Circuit published law that that language granted discretion, an admission that there was a grant of discretion. It's not a stipulation. And, Your Honor, unless there are any other questions, I'd be happy to sit down. Thank you. Briefly, Your Honors, a couple comments. One is it's not the point that Ingram overrules or doesn't overrule. Ingram clearly clarifies what Benedictson is all about. Benedictson's statement regarding the standard of review or the discretion granted or conferred upon the plan administrator is dicta in the case, because that case did not deal with the clarity of the language. The case, as Judge Fletcher says, it dealt with a different issue, dealing with the breach of fiduciary duty. If you apply the Ingram analysis to this policy, this policy does not grant discretion. If it doesn't grant discretion, Aaron Sapp then gets the benefit of the contra-preferendum rule. Own occupation is ambiguous. The only evidence in the record, Your Honors, is that Aaron Sapp cannot do a non-sedentary job. There is no evidence to the contrary, and, in fact, standard doctors support that proposition. He can't sit, he can't bend. It would be an injustice, quite frankly. The first appeal in this case, and what this court decided, was not the clarity of the language. That was not at issue. It was never at issue here, rightfully or wrongfully. The issue dealing with abuse of discretion was whether or not there was a conflict. Evidence of a conflict of the plan administrator that would heighten the standard of review. They determined it wasn't. And, lastly, there is no evidence in the record, even if one had to use and revert to the abuse of discretion standard, there is no evidence in the record to rebut Dr. Gonzalez's statements at, excuse me, Dr. Gonzalez's statements at the, anyway, Dr. In 1998, Dr. Gonzalez, at 178, Your Honors, Dr. Gonzalez wrote that he, that Aaron Sapp had chronic pain, sleep deprivation, cognitive impairment, including difficulty with concentration and memory. This was, this is replete through the record, the medical record from Dr. Gonzalez's treatment of Aaron Sapp. There is nothing in the record that rebuts that. And if that is the case, I would suggest to this court that the abuse of discretion standard has not been met, because there is no evidence to support the conclusion that he has the cognitive ability. Thank you very much. Thank you, Your Honor. The case just argued will be submitted.
judges: Reinhardt, Graber Shadur